FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Chief, Criminal Division

MICHAEL NAMMAR
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
michael.d.nammar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO.  11-00839 DAE |
| | ) | |
| Plaintiff, | ) | MOTION FOR HEARING ON CONFLICT |
| | ) | OF INTEREST; ATTACHMENTS 1-4; |
| vs. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| TORY WINWARD,           (01) | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MOTION FOR HEARING ON CONFLICT OF INTEREST

The United States moves the Court for a hearing, pursuant to Rule 44 of the Federal Rules of Criminal Procedure, on the issue of whether the representation of Defendant Tory Winward by defense counsel, Michael Jay Green and Lynn Panagakos, presents actual or potential conflicts of interest in the above-captioned matter.  The United States further requests

the Court to determine, if there is a conflict, whether Winward may waive his constitutional right to conflict-free counsel.

**I.      Background**

On August 26, 2011, the United States filed a sealed Complaint as to co-defendants Winward, Curtis Swanson, and Jesse Keoki Toshio Yoshino.  CR 1.[1]  On August 29, 2011, all three co-defendants were arrested and had their initial appearances before United States Magistrate Judge Richard L. Puglisi.  CR 7.  After reviewing financial affidavits executed by the three co-defendants, Judge Puglisi appointed Lynn Panagakos to represent Swanson (CR 7), Deputy Federal Public Defender Donna Gray to represent Winward (CR 4), and Alvin Nishimura to represent Yoshino (CR 11).

On September 7, 2011, a federal grand jury in the District of Hawaii returned a two-count Indictment charging Winward, along with Swanson and Yoshino, with conspiracy to interfere with commerce by extortion over a period of roughly 20 months.  CR 22.  On September 8, 2011, Winward appeared before Magistrate Judge Kevin S.C. Chang for arraignment and entered a not guilty plea.  CR 27.  On September 9, 2011, Swanson appeared before Judge Chang for arraignment and also entered a not guilty plea.  CR 28.  On September 29, 2011, Donna Gray withdrew as counsel for Winward and Michael Jay Green substituted as retained counsel.  CR 40. On October 6, 2011, Lynn Panagakos withdrew as counsel for Swanson and William Harrison substituted as counsel.  CR 51.

On May 18, 2012, Winward filed a Motion to Dismiss Count One of the Indictment for Lack of Jurisdiction (CR 143) and a Motion to Dismiss Count One for Failure to State an

---

[1] As used throughout, the Clerk's Record is abbreviated "CR" and is referenced by docket number.

Offense (CR 144).  Both motions were signed by Lynn Panagakos, for Michael Jay Green, as counsel for Winward.  As of June 12, 2012, Panagakos has yet to enter her appearance as co-counsel on behalf of Winward.

      Mr. Green substituted in as counsel for Winward on September 29, 2011, and continues to represent Winward in the instant case.  The United States has learned, however, that Green simultaneously represents four plaintiffs in currently pending civil cases in the Circuit Court of the First Circuit, State of Hawaii, against, among others, The Shack, Waikiki, Inc.  Specifically, Green represents Stanton E.U. Reis-Vierra in Civil No. 11-1-2931-11-KKS, Justine Stevens in Civil No. 12-1-0344-02-GWBC, Nainoa Bettencourt in Civil No. 12-1-0741-03-KKS, and Michael Scalera in Civil No. 09-1-2090-09 GWBC.  These complaints, summarized below, are attached in full.  See Attachments 1-4.  Relevant to this motion, during the time periods set forth in the civil complaints, Winward served as the head of security at The Shack Waikiki, and owned a portion of The Shack Waikiki.

      A.      Stanton E.U. Reis-Vierra

      The Reis-Vierra Complaint was filed on November 29, 2011, by Green and Glenn H. Uesugi, and is attached hereto as Attachment 1.  Reis-Vierra's Complaint names The Shack, Waikiki, Inc., CB Richard Ellis Hawaii, Inc., CB Richard Ellis, Inc., Waikiki Trade Center Investors, LLC, and Doe Defendants 1-100 as defendants.  The Complaint alleges that on or about November 15, 2009, Jasmine Torres, Reis-Vierra's girlfriend at the time, was sexually assaulted by Shack employees.  After learning of this incident, Reis-Vierra went to the premises of The Shack Waikiki on or about the night of December 1, 2009, to speak to the manager. According to the Complaint, Reis-Vierra met with the manager and three or four other security guards from The Shack Waikiki to discuss the incident involving Ms. Torres.  The argument

became heated and Reis-Vierra was violently assaulted to unconsciousness by Shack Waikiki management and/or security guards.  In his Complaint, Reis-Vierra alleges the following against defendants:  assault and/or battery, negligence (failure to train and/or supervise), intentional infliction of emotional distress, and negligent infliction of emotional distress.

Representatives from the Waikiki Trade Center, where The Shack Waikiki is located, produced a videotape of Reis-Vierra being assaulted.  The video, which was sent out as discovery in this case, shows Winward and his associates assaulting Reis-Vierra.  Evidence of this assault will be introduced at trial because it is relevant to the victims' fearful state of mind.  See United States v. Blackwood, 768 F.2d 131, 138 (7th Cir. 1985); United States v. DeMasi, 445 F.2d 251, 257 (2d Cir. 1971).

  B. Justine Stevens

The Stevens Complaint was filed on February 6, 2012, by Green and Glenn H. Uesugi, and is attached hereto as Attachment 2.  The Stevens Complaint names The Shack, Waikiki, Inc., CB Richard Ellis Hawaii, Inc., CB Richard Ellis, Inc., Waikiki Trade Center Investors, LLC, and Doe Defendants 1-100 as defendants.  The Complaint alleges that on or about February 7, 2010, Stevens was severely beaten on the premises of The Shack Waikiki by the manager's wife, Ms. Burchfiel.  Five security guards assisted in the assault by helping to restrain Stevens and encircling the fight to prevent others from stopping it.  In her Complaint, Stevens alleges the following against defendants:  assault and/or battery, negligence (failure to train and/or supervise), intentional infliction of emotional distress, and negligent infliction of emotional distress.

  C. Nainoa Bettencourt

The Bettencourt Complaint was filed on March 19, 2012, by Green and Glenn H. Uesugi,

and is attached hereto as Attachment 3. Bettencourt's Complaint names The Shack, Waikiki, Inc., CB Richard Ellis Hawaii, Inc., CB Richard Ellis, Inc., Waikiki Trade Center Investors, LLC, and Doe Defendants 1-100 as defendants. The Complaint alleges that on or about May 21, 2010, Bettencourt went to the premises of The Shack Waikiki. After ordering a beer, Bettencourt was suddenly attacked by Shack Waikiki bouncers and knocked unconscious, then thrown out the back door of the premises. Bettencourt's Complaint alleges the following against defendants: assault and/or battery, negligence (failure to train and/or supervise), intentional infliction of emotional distress, and negligent infliction of emotional distress.

      D.      Michael Scalera

The Scalera Complaint was filed on September 9, 2009, by Donald E. Fisher and Ryan W. Roylo of Copulos Fisher & Roylo law firm, and is attached hereto as Attachment 4. Mr Fisher and Mr. Roylo withdrew as counsel for Scalera on December 30, 2009, and Green and Glenn H. Uesugi were substituted. Scalera's Complaint names The Shack, Waikiki, Inc., CB Richard Ellis Hawaii, Inc., CB Richard Ellis, Inc., Waikiki Trade Center Investors, LLC, and Doe Defendants 1-100 as defendants. Scalera asserts that he was violently beaten by Shack Waikiki security personnel without provocation or consent. In his Complaint, Scalera alleges the following against the defendants: negligence (failure to train and/or supervise), creation of a dangerous situation, respondeat superior, battery, assault, outrageous conduct/intentional infliction of emotional distress, gross negligence, punitive damages, and parental liability.

**II.    ARGUMENT**

      A.      The Right to Conflict-Free Counsel

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. One element of this right is the accused's right to select and

be represented by the attorney of his choice.  See United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006).  Nevertheless, this right is not absolute as the "essential aim" of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988).

The Sixth Amendment also guarantees a criminal defendant the right to assistance of counsel unburdened by conflicts of interest.  United States v. Elliot, 463 F.3d 858, 867 (9th Cir. 2006) ("Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended by counsel, and this means counsel not burdened by a conflict of interest." (citing "United States v. Henke, 222 F.3d 633, 638 (9th Cir. 2000)); Bonin v. California, 494 U.S. 1039, 1044 (1990) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial.").  Thus, while there is a presumption in favor of a defendant's counsel of choice, Gonzalez-Lopez, 126 S. Ct. at 2561, "that presumption may be overcome not only by a demonstration of actual conflict of interest but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164.  Determining whether a conflict exists "must be left primarily to the informed judgment of the trial court." Id.

An attorney has an actual conflict of interest, versus a potential conflict of interest, when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue, or to a course of action.  United States v. Baker, No. 99-56718, 2001 WL 474147 (9th Cir. May 7, 2001) (quoting United States v. Levy, 25 F.3d 146,

155 (2d Cir. 1994)); see also Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000) ("An actual conflict exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."). Where an actual conflict exists, prejudice to the defendant is presumed. Mickens v. Taylor, 535 U.S. 162, 171 (2002).

A potential conflict, in contrast, is one that may arise in the future. Cuyler v. Sullivan, 446 U.S. 335, 356 (1980) (there is a possibility of conflict "if the interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.").

The Court may allow an attorney to proceed despite a conflict "if the defendant makes a voluntary, knowing, and intelligent waiver." United States v. Martinez, 143 F.3d 1266, 1269 (9th Cir. 1998). Nevertheless, even in cases where a defendant waives an actual or potential conflict, district courts have "substantial latitude in refusing waivers of conflicts of interest" in favor of disqualification in cases "where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163. The Supreme Court has recognized the difficulty inherent in these situations:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

Id. at 162-63.

In ascertaining the existence of an actual or serious potential conflict, the Court may look in part to the relevant body of professional rules. See In re Grand Jury Investigation, 447 F.

Supp. 2d 453, 458 (E.D. Pa. 2006)(finding that the Rules of Professional Conduct provide a useful guide against which to measure the conduct of lawyers subject to a disqualification motion). The Local Rules for the District of Hawaii require attorneys practicing in the district to comply with the Hawaii Rules of Professional Conduct ("HRPC"). See Local Rule 83.3.

HRPC Rule 1.7 provides that:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

    (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

    (2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:

    (1) the lawyer reasonably believes the representation will not be adversely affected; and

    (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Nonetheless, "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation under the circumstances. When more than one client is involved, the question of conflict must be resolved as to each client." HRPC 1.7 cmt. ¶ 5.

    B.    A Conflict of Interest Exists Warranting Green's Disqualification

In the instant case, Green's simultaneous representation of the four plaintiffs in the state

8

civil actions and Winward in the federal criminal case presents serious conflicts of interest. Accordingly, the United States promulgates those reasons that most warrant Green's disqualification. While the following discussion is by no means exhaustive, as "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," Wheat, 486 U.S. at 162-63, it simply highlights how Green's dual representation presents a wealth of serious conflicts.

Conflicts of interest arise "whenever an attorney's loyalties are divided." United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991). Such conflicts can arise from both successive and simultaneous representation. See United States v. Rewald, 889 F.2d 836, 857-58 (9th Cir. 1989) (citing Fitzpatrick v. McCormick, 869 F.2d 1247, 1252 (9th Cir. 1989)). "Whether a conflict of interest exists depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representation is related; [and] how close in time the multiple representation are related." United States v. Infante, 404 F.3d 376, 392 (5th Cir. 2005).

Here, Green's concurrent representation of Winward and the four plaintiffs suing The Shack constitutes an actual, if not potential, conflict of interest because Green's loyalties are divided. As counsel, Green has privileged, confidential information from each of his clients that is relevant and potentially harmful to the other clients' cases. For instance, information gained by representing Winward in the criminal case may prevent Green from being able to fairly and adequately represent his civil clients. Conflict-free counsel, on the other hand, would avoid such an obstacle and have the ability to properly advocate without an underlying fear of implicating his other clients. Moreover, because a favorable outcome in the criminal action has a beneficial

impact on the civil cases, Green has a pecuniary interest in Winward's conviction.  Such a conflict inevitably compromises his ability to zealously advocate for Winward.

Indeed, courts have found that an actual conflict of interest exists when counsel simultaneously represents a criminal defendant and a party to a civil suit.  See McConico v. State of Alabama, 919 F.2d 1543, 1547-49 (11th Cir. 1990); Zuck v. State of Alabama, 588 F.2d 436, 439 (5th Cir. 1979).  In Zuck, the court granted habeas relief and held that a criminal defendant's right to counsel had been violated by an actual conflict of interest when the defendant's attorney's law firm represented the State prosecutor, in an unrelated civil matter, during defendant's murder trial.  Id. at 349.  Similarly, in McConico, the court granted habeas relief and found an actual conflict of interest when an attorney simultaneously represented the defendant, who claimed self-defense in a criminal murder prosecution, and the victim's life policy beneficiary, who could have lost benefits if the victim was the initial aggressor.  See McConico, 919 F.2d at 1547-49 (11th Cir. 1990).  The court explained that "by placing himself between two adverse parties and actively representing both, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." Id.  at 1547.  This conflict, the court held, was "actual, obvious, and serious enough" that it should have been presented to his clients and the Court. Id. at 1548.  Likewise, the actual conflicts presented by Green's dual representation are equally obvious and serious, and warrant his disqualification.

Green will also have effectively placed himself between his state civil clients and Winward should Winward testify in any of the civil cases.  In that event, if Green refrains during any direct or cross-examination from asking questions based on knowledge gained from his representation or meetings with Winward, he may breach his duty to his civil clients; if he does

ask such questions, he may breach his duty to Winward and disclose confidential and privileged attorney-client information. Since Winward's future involvement in the civil cases will almost certainly happen, and since there is great potential for Green to conduct the defense of Winward differently than would an attorney who had not also represented victims filing charges against the Defendant, the Court should intervene.

Under these circumstances, Green has multiple conflicts of interest that prevent him from properly representing his clients. These conflicts are so serious that they cannot be waived by Winward. Since effective assistance counsel includes a right to conflict-free counsel, United States v. Mett, 65 F.3d 1531, 1534 (9th Cir. 1995), the Court should inquire about the propriety of concurrent representation when the clients involved have such readily apparent adverse interests.

C.   A Conflict of Interest Exists Warranting Panagakos's Disqualification

Ms. Panagakos represented co-defendant Swanson for over a month: from August 29, 2011, the date of his Initial Appearance, to October 6, 2011. During this time period, Panagakos presumably obtained privileged information from Swanson regarding events relevant to the charges contained in the Indictment. Although she has yet to formally enter her appearance on behalf of Winward, on May 18, 2012, Panagakos signed and filed two motions on Winward's behalf for Green. In addition, Green has orally represented to the undersigned that Panagakos will be serving as co-counsel for Winward at trial.

The successive representation of Swanson and Winward by Panagakos creates, at the very least, an appearance of a conflict of interest. See Elliot, 463 F.3d at 865 (affirming district court's finding that attorney's successive representation of two clients in the same matter

presented, at a minimum, a potential conflict of interest). Moreover, Hawaii Rule of Professional Conduct 1.9(a) forbids a lawyer who has represented one client in a given matter from representing another client "in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." While the United States has knowledge that Panagakos has obtained a waiver of this conflict from Swanson and/or Winward, certain conflicts are so serious that they cannot, and should not, be waived.

      Where an actual conflict exists, courts may decline a proffer of waiver. See Wheat, 486 U.S. at 162. Courts may also refuse to accept waivers under circumstances that suggest a potential conflict of interest. Id. Panagakos's prior representation of Swanson is a conflict that should not be eligible for waiver because her continuing representation would surrender her ability to ethically defend Winward in his trial. For instance, if Swanson testifies, or if any of Swanson's post-arrest statements are introduced through witnesses, it would be in Panagakos's best interest to vigorously cross-examine such testimony. The conflict that taints Panagakos's representation of Winward is that when she spoke with Swanson, she became bound to preserve the interests of Swanson and bound not to use or divulge, explicitly or implicitly, any communications. This conflict of loyalty would be untenable during cross-examination at trial. See Moscony, 927 F.2d at 750 ("Conflicts of interest arise whenever an attorney's loyalties are divided . . . and an attorney who cross-examines former clients inherently encounters divided loyalties."); Porter v. Wainwright, 805 F.2d 930, 939 (11th Cir. 1986) (recognizing that an actual conflict is posed if an attorney is forced to choose between discrediting his former client through information learned in confidence, or foregoing a vigorous cross-examination to preserve the

attorney-client privilege).

  Further, one who waives his Sixth Amendment right to conflict-free counsel should do so openly in the presence of the Court. Cf. Fed. R. Crim. P. 44(c)(2). A defendant's right to conflict-free counsel must be facilitated in front of the Court, not behind closed doors, to ensure that each defendant has been adequately briefed on the probable hazards of submitting a waiver. Should Panagakos or Green fail to discuss this matter with Winward, Winward may later claim that he received ineffective assistance of counsel. See e.g., Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114 (1987).

//

//

//

//

//

//

//

//

//

//

//

//

//


### III.     Requested Action

The United States moves this Court to hold a hearing to inquire as to the conflict of interest created by each defense counsel's representation of Winward.  The United States further requests the Court to determine, if there is a conflict, whether Defendants may waive their constitutional right to conflict-free counsel, and if so, whether they have validly done so.  In that event, the Court should finally determine whether to accept or decline the waivers in light of the conflicts posed by Green's and Panagakos's representation of Winward.

Dated:  June 12, 2012, at Honolulu, Hawaii.

Respectfully submitted,

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

 /s/ Michael Nammar
MICHAEL NAMMAR
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically by CM/ECF:

Michael J. Green, Esq.  michaeljgreen@hawaii.rr.com        June 12, 2012
Attorney for Defendant
TORY WINWARD


DATED:  June 12, 2012, at Honolulu, Hawaii.

/s/ Michael Nammar
MICHAEL NAMMAR
Assistant U.S. Attorney