ORIGINAL

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2011 NOV 29 PM 4:16

A. MARPLE
CLERK

MICHAEL JAY GREEN    4451
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Fax: (808) 566-0347

GLENN H. UESUGI    4865
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Fax: (808) 566-0347

Attorneys for Plaintiff
STANTON E.U. REIS-VIERRA

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STANTON E.U. REIS-VIERRA, | CIVIL NO. 11-1-2931-11 · KKS |
| Plaintiff, | [Non-Motor Vehicle Tort] |
| vs. | COMPLAINT; DEMAND FOR JURY TRIAL; and SUMMONS |
| THE SHACK, WAIKIKI, INC.; CB RICHARD ELLIS HAWAII, INC.; CB RICHARD ELLIS, INC.; WAIKIKI TRADE CENTER INVESTORS, LLC and DOE DEFENDANTS 1-100, | |
| Defendants. | |

## COMPLAINT

COMES NOW, Plaintiff STANTON E.U. REIS-VIERRA(hereinafter "Plaintiff VIERRA"), by and through his attorneys, Michael Jay Green and Glenn H. Uesugi, and for Complaint against Defendants THE SHACK, WAIKIKI, INC.; CB RICHARD ELLIS HAWAII, INC.; CB RICHARD ELLIS, INC.; WAIKIKI TRADE CENTER INVESTORS, LLC and DOE DEFENDANTS 1-100,, allege and aver as follows:

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

_____
Clerk, Circuit Court, First Circuit

**ATTACHMENT 1**

RECEIVED
476

1. Plaintiff VIERRA is and was at all times relevant herein a resident of the County of Honolulu, State of Hawaii.

2. Defendant THE SHACK, WAIKIKI, INC. (hereinafter "Defendant SHACK") is and was at all times relevant herein a Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

3. The employees, agents, associates, and/or representatives of Defendant SHACK and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant SHACK were acting within the scope of such relationship. Defendant Defendant SHACK is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

4. The employees, agents, associates, and/or representatives of Defendant SHACK were acting under the actual and/or apparent authority and/or agency of Defendant Defendant SHACK. Therefore, Defendant SHACK is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant SHACK under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

5. Defendant CB RICHARD ELLIS HAWAII, INC. (hereinafter "Defendant CB HAWAII") is and was at all times relevant herein foreign profit corporation doing business in the City and County of Honolulu, State of Hawaii.

6. The employees, agents, associates, and/or representatives of Defendant CB HAWAII and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant CB HAWAII were acting within the scope of such relationship. Defendant CB HAWAII is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

7. The employees, agents, associates, and/or representatives of Defendant CB HAWAII were acting under the actual and/or apparent authority and/or agency of Defendant CB HAWAII. Therefore, Defendant CB HAWAII is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant CB HAWAII under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

8. Defendant CB RICHARD ELLIS, INC. (hereinafter "Defendant CB") is and was at all times relevant herein Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

9. The employees, agents, associates, and/or representatives of Defendant CB and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant CB were acting within the scope of such relationship. Defendant CB is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

10. The employees, agents, associates, and/or representatives of Defendant CB were

3

acting under the actual and/or apparent authority and/or agency of Defendant CB. Therefore, Defendant CB is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant CB under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

11. Defendant WAIKIKI TRADE CENTER INVESTORS, LLC (hereinafter "Defendant WTC") is and was at all times relevant herein Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

12. The employees, agents, associates, and/or representatives of Defendant WTC and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant WTC were acting within the scope of such relationship. Defendant WTC is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

13. The employees, agents, associates, and/or representatives of Defendant WTC were acting under the actual and/or apparent authority and/or agency of Defendant WTC. Therefore, Defendant WTC is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant WTC under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

14. Upon information and belief, at all times relevant herein, Defendant SHACK owned, operated and/or managed a property located at 2255 Kuhio Avenue, Suite S-10 and S-11, Honolulu, Hawaii 96815 and that said premises owned, operated, and/or managed by Defendant

SHACK are part of, located at within and/or comprise either in whole or in part the Waikiki Trade Center located at 2255 Kuhio Avenue, Honolulu, Hawaii 96815.

15. Upon information and belief, at all times relevant herein, Defendants CB HAWAII, CB and/or WTC owned, operated and/or managed a property known as the Waikiki Trade Center located at 2255 Kuhio Avenue, Honolulu, Hawaii 96815.

16. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOE DEFENDANTS 1-100 and therefore sue said Defendants by such fictitious names. Plaintiff will amend his Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct. Plaintiff has made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. Plaintiff is informed and believes and therefore alleges that at all times herein mentioned, Defendants, and each of them, were the agents, servants and employees of each of the other Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment.

17. All events described herein occurred in the County of Honolulu, State of Hawaii, and within the jurisdiction of the Circuit Court of the First Circuit, State of Hawaii.

18. On or about November 15, 2009, Jasmine Torres was a customer at the Shack Waikiki. She received a complementary drink from a bartender at the Shack Waikiki on the premises of the Shack Waikiki.

19. A reggae band was playing at the Shack Waikiki on November 15, 2009, which is the reason why Ms. Torres was there with her friends.

20. A short while after consuming the complementary drink, Ms. Torres felt sick and wanted to use the restroom. On the way to the restroom, Ms. Torres was intercepted by a Shack Waikiki security guard wearing a Shack Waikiki security shirt and was escorted into the elevator of the Waikiki Trade Center.

21. Ms. Torres did not know who the Shack Waikiki security guard.

22. Ms. Torres believes that she was given a "date rape" drug by the Shack Waikiki bartender when he gave her the complementary drink.

23. Ms. Torres and the Shack Waikiki security guard ended up on a high floor, a floor which required security access be on.

24. Once on the high floor of the Waikiki Trade Center, the Shack Waikiki security guard attempted to sexually assault Ms. Torres.

25. When she was being sexually assaulted, Ms. Torres resisted by screaming at the top of her lungs and pushing the Shack Waikiki security guard away.

26. The Shack Waikiki security guard got scared and left, leaving Ms. Torres by herself on the secured access floor of the Waikiki Trade Center.

27. Ms. Torres attempted to leave, but was unable to operate the elevators because she did not have the required security access card.

28. Eventually, the police arrived and took Ms. Torres to the emergency room.

29. At the time of the above incident, Ms. Torres was the girlfriend of Plaintiff VIERRA.

30. After, Ms. Torres told Plaintiff VIERRA what had happened at the Shack Waikiki the night before.

31. On or about the night of December 1, 2009, Plaintiff VIERRA went to the premises of the Shack Waikiki to speak to the manager. Plaintiff VIERRA walked around the premises of the Shack Waikiki, and seeing that the manager Brandon B was not there, spoke to a bartender who was tending bar at the time.

32. Plaintiff VIERRA asked the bartender on duty if he could get the telephone number of Mr. Brandon, the manager/owner of the Shack Waikiki so that they could speak about the incident with Ms. Torres. Plaintiff VIERRA told the bartender the story of what happened to Ms. Torres two weeks earlier.

33. After listening to the incident involving Ms. Torres, the bartender on duty gave Plaintiff VIERRA Mr. Brandon's cellular telephone number.

34. Plaintiff VIERRA then left the premises of the Shack Waikiki and went to meet his friends at another establishment across the street. Plaintiff VIERRA called Mr. Brandon, but Mr. Brandon did not answer the telephone call. Plaintiff VIERRA then left a message for Mr. Brandon to please call him back.

35. Approximately 20 to 30 minutes later, Mr. Brandon called Plaintiff VIERRA back. Mr. Brandon stated to Plaintiff VIERRA that if he wished to speak to him, that he was at the Shack Waikiki and that he could speak to him there.

36. Plaintiff VIERRA then walked across the street and met with Mr. Brandon.

37. Plaintiff VIERRA spoke to Mr. Brandon as well as three or four security guards from the Shack Waikiki about the incident involving Ms. Torres.

38. The conversation between Plaintiff VIERRA and Mr. Brandon got somewhat heated.

39. Plaintiff VIERRA was then violently assaulted without provocation by Mr. Brandon and/or security guards from the Shack Waikiki.

40. Plaintiff VIERRA was beaten to unconsciousness and then dragged to Seaside Avenue near Starbucks on the Waikiki Trade Center property.

41. Plaintiff VIERRA was then taken via ambulance to the emergency room.

42. Defendant SHACK knew or should have known of the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel prior to the incident which forms the basis of this lawsuit.

43. Despite the knowledge of the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel, Defendant SHACK failed to take any reasonable action(s) to address the dangerous condition or otherwise remove the danger presented by its employees, agents, representatives or security personnel to it patrons and/or the general public.

44. The owners and/or management of Defendant SHACK know or should have known and/or observed and therefore was aware of the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel but did nothing to investigate, remove, warn or otherwise address the dangerous condition presented by its security personnel to its patrons and/or the general public.

45. Defendant SHACK retained security services and/or security personnel for the premises.

46. Defendant SHACK through its employees, agents, representatives or security personnel witnessed the incident, stood by and failed to act, intervene and/or protect Plaintiff

and/or otherwise negligently performed and/or omitted to perform security related duties to prevent the incident, protect Plaintiff from the physical contacts and injuries suffered in the incident, and/or timely respond and/or intervene to halt the physical contacts and injury of Plaintiff.

47. Defendant SHACK had a duty to provide adequate security for the premises, in general, and for Plaintiff in particular.

48. Defendant SHACK through its employees, agents, representatives or security personnel failed in the discharge of that duty.

49. Defendant SHACK failed in the discharge of its duty to provide adequate security for the premises in general and Plaintiff in particular.

50. Defendant SHACK was negligent in hiring, training, and/or supervision of its employees, agents, representatives or security personnel responsible for upholding the duty owed to Plaintiff.

51. Defendant SHACK was negligent in the hiring, training, and supervision of its security personnel.

52. Defendant SHACK owed a duty to Plaintiff to protect him from unreasonable risks of harm and/or danger from its employees, agents, and/or representatives while Plaintiff was both on or off the premises.

53. Defendant SHACK breached its duty to protect Plaintiff from unreasonable risks of harm and/or danger from its employees, agents, and/or representatives and/or security personnel while Plaintiff was both on or off the premises.

54. As a result of prior crimes and/or incidents that occurred on and/or off the

premises, Defendant SHACK knew or in the exercise of reasonable care, should have known of the possibility, if not the propensity, for criminal conduct on and/or off the premises being perpetrated by its employees, agents and/or representatives and/or security personnel.

55. As a result of Defendant SHACK'S knowledge, it had a duty to protect patrons and others from the foreseeable danger and/or harm of the type caused by its employees, agents and/or representatives and/or security personnel and/or DOE DEFENDANTS on Plaintiff.

56. Defendant SHACK breached its duty including, but not limited to, failing adequately to protect Plaintiff from harm by failing to supervise its employees, agents and/or representatives and/or security personnel and/or to have sufficient and adequately trained security staff.

57. Upon information and belief, Plaintiff alleges and avers that on occasions prior to the attack on Plaintiff, others have been assaulted by employees, representatives, agents or security personnel of Defendant SHACK at the Waikiki Trade Center.

58. Defendants CB HAWAII, CB, and/or WTC knew or should have known of the abusive, inappropriate, threatening, and violent behaviors and/or propensity for violence of its tenants, Defendant SHACK'S employees, representatives, agents and/or security personnel prior to the attack upon Plaintiff.

59. Despite the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence of Defendant SHACK'S employees, agents, representatives and/or security personnel, Defendants CB HAWAII, CB, and/or WTC failed to take any reasonable actions to address the dangerous condition or otherwise remove the danger presented by Defendant SHACK or its employees, representatives, agents and/or security personnel to its

patrons and/or the general public, including but not limited to, investigating, warning, removing, evicting or otherwise addressing the dangerous condition created by Defendant SHACK.

60. As a result of these prior crimes and/or incidents at the Waikiki Trade Center and/or the SHACK premises, Defendants CB HAWAII, CB, and/or WTC knew or in the exercise of reasonable care, should have known of the possibility, if not the propensity, for criminal conduct at the Waikiki Trade Center and/or the SHACK premises being perpetrated by Defendant SHACK'S employees, representatives, agents and/or security personnel and/or DOE DEFENDANTS.

61. As a result of Defendants CB HAWAII, CB, and/or WTC's knowledge, Defendants CB HAWAII, CB, and/or WTC had a duty to protect patrons and/or the general public from the foreseeable danger and/or harm of the type caused by Defendant SHACK's employees, representatives, agents and/or security personnel and/or DOE DEFENDANTS on Plaintiff.

62. Defendants CB HAWAII, CB, and/or WTC owed a duty to Plaintiff to provide adequate security for the Waikiki Trade Center and/or SHACK premises in general and Plaintiff in particular.

63. Defendants CB HAWAII, CB, and/or WTC breached their respective duties, including, but not limited to, failing adequately to protect Plaintiff from harm by failing to supervise the Waikiki Trade Center and/or SHACK premises appropriately and to have sufficient and adequately trained security staff monitor the Waikiki Trade Center and/or SHACK premises and protect patrons.

64. Defendants CB HAWAII, CB, and/or WTC failed in the discharge of its/their

duty to provide adequate security for the Waikiki Trade Center and/or SHACK premises in general and Plaintiff in particular.

65. Upon information and belief, Plaintiff alleges and avers that at all relevant times herein, Defendants CB HAWAII, CB, and/or WTC, by and through their agents, employees, and/or representatives retained security services and/or security personnel for the Waikiki Trade Center.

66. Upon information and belief, Plaintiff alleges and avers that at the time of the incident involving said Defendants and Plaintiff set forth above, Defendants CB HAWAII, CB, and/or WTC, together, individually or through their employees, agents, and/or representatives, and/or security personnel, witnessed the incident, stood by and failed to act, intervene, and/or protect Plaintiff, and/or otherwise negligently performed and/or omitted to perform security related duties to prevent the incident, protect Plaintiff from the physical contacts and injuries suffered in the incident, and/or timely respond and/or intervene to halt the physical contacts and injuries of Plaintiff.

67. Defendants CB HAWAII, CB, and/or WTC, together or individually, were negligent in hiring, training, and/or supervision of its employees, representatives, agents or security personnel responsible for upholding the duty owed to Plaintiff.

68. Defendants CB HAWAII, CB, and/or WTC, either directly and/or through their agents, were negligent in hiring, training, and supervising, each respective security personnel.

69. Defendants CB HAWAII, CB, and/or WTC owed a duty to Plaintiff to protect him from unreasonable risks of harm and/or danger while he was on the Waikiki Trade Center premises.

70. Defendants CB HAWAII, CB, and/or WTC breached its duty to protect Plaintiff from unreasonable risks of harm and/or danger while he was on the Waikiki Trade Center premises.

71. Defendants CB HAWAII, CB, and/or WTC are responsible for the acts and omissions of their agents, contractors and employees as well as its own.

72. Defendants CB HAWAII, CB, and/or WTC, individually and/or separately or in combination, by and/or through its/their respective agents, employees and/or authorized representatives, operated, maintained and/or managed the Waikiki Trade Center premises.

73. Defendants CB HAWAII, CB, and/or WTC, its/their agents, servants, employees, and/or authorized representatives owed a duty of care to persons on the Waikiki Trade Center premises, and Plaintiff would not have sustained injuries and damages in the ordinary course of events unless the person or persons exercising management or control of the Waikiki Trade Center failed to exercise ordinary care or had been negligent.

74. Defendants SHACK, CB HAWAII, CB, and/or WTC its/their respective agents, servants and/or employees negligent performance and/or omission to perform their duties with respect to the presence and conduct of Defendant SHACK's employees, agents, representatives and/or security personnel and DOE DEFENDANTS as set forth above, negligently created a dangerous condition on the Waikiki Trade Center premises, resulting in Plaintiff being battered, injured and damaged.

75. In committing the above acts and omissions, Defendants acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations and/or there has been some wilful misconduct that demonstrates that entire want

of care which would raise the presumption of a conscious indifference to consequences, justifying an award of punitive damages in an amount to be proven at trial.

## COUNT I: ASSAULT AND/OR BATTERY

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as if said paragraphs were fully set forth herein.

77. The above acts by Defendants constituted unlawful assault and/or battery against Plaintiffs.

78. As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiffs suffered special and general damages in an amount to be proven at trial.

## COUNT II: NEGLIGENCE

79. Plaintiff realleges and incorporates by reference paragraphs 1 through 78 as if said paragraphs were fully set forth herein.

80. Based on the acts described above, Defendants are liable to Plaintiff for negligence for failing to, *inter alia*:

    a. Properly train, supervise, discipline, retain, hire and/or discharge its employees, agents and/or representatives; and/or

    b. Was otherwise negligent in its care and/or treatment of Plaintiff during the events in question on or about the December 1, 2009 and thereafter.

81. As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as if said paragraphs were fully set forth herein.

83. The above acts by Defendants with respect to Plaintiff constituted intentional infliction of severe emotional distress.

84. As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiff realleges and incorporates by reference paragraphs 1 through 84 as if said paragraphs were fully set forth herein.

86. The above acts by Defendants with respect to Plaintiff constituted negligent infliction of severe emotional distress.

87. As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully prays for judgment in their favor and against Defendants jointly and severally, as follows:

A. For general damages in amount to be shown at trial;

B. For special damages in an amount to be shown at trial;

C. For punitive and/or exemplary damages in an amount to be shown at trial; and

D. For attorneys' fees, costs, prejudgment and post-judgment interest and such

other and further relief both legal and equitable as the Court deems just and necessary under the circumstances.

DATED: Honolulu, Hawaii, NOV 28 2011

_____

MICHAEL JAY GREEN
GLENN H. UESUGI
Attorneys for Plaintiff
STANTON E.U. REIS-VIERRA

16

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STANTON E.U. REIS-VIERRA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> vs. ) <br> ) <br> THE SHACK, WAIKIKI, INC.; CB ) <br> RICHARD ELLIS HAWAII, INC.; CB ) <br> RICHARD ELLIS, INC.; WAIKIKI TRADE ) <br> CENTER INVESTORS, LLC and DOE ) <br> DEFENDANTS 1-100, ) <br> ) <br> Defendants. ) <br> _____) | CIVIL NO. _____ <br> [Non-Motor Vehicle Tort] <br><br> DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED: Honolulu, Hawaii, NOV 28 2011 _____

_____
MICHAEL JAY GREEN
GLENN H. UESUGI
Attorneys for Plaintiff
STANTON E.U. REIS-VIERRA

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STANTON E.U. REIS-VIERRA, ) | CIVIL NO. 11-1-2931-11 |
| ) | [Non-Motor Vehicle Tort] |
| Plaintiff, ) | |
| ) | SUMMONS |
| vs. ) | |
| ) | |
| THE SHACK, WAIKIKI, INC.; CB ) | |
| RICHARD ELLIS HAWAII, INC.; CB ) | |
| RICHARD ELLIS, INC.; WAIKIKI TRADE ) | |
| CENTER INVESTORS, LLC and DOE ) | |
| DEFENDANTS 1-100, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SUMMONS

STATE OF HAWAII

TO:   THE DEFENDANTS

YOU ARE HEREBY SUMMONED and required to file with the court and serve upon Plaintiff's attorneys, whose address is stated above, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer within the twenty day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled Court permits, in writing on this Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, _____ NOV 2 9 2011 _____

_____
CLERK OF THE ABOVE-ENTITLED COURT

2