ORIGINAL

MICHAEL JAY GREEN     4451
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Fax: (808) 566-0347

GLENN H. UESUGI     4865
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Fax: (808) 566-0347

Attorneys for Plaintiff
JUSTINE STEVENS

FILED

2012 FEB -6  PM 2: 47

A. MARPLE
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| JUSTINE STEVENS,<br><br>      Plaintiff,<br><br>     vs.<br><br>THE SHACK, WAIKIKI, INC.; CB RICHARD ELLIS HAWAII, INC.; CB RICHARD ELLIS, INC.;  WAIKIKI TRADE CENTER INVESTORS, LLC and DOE DEFENDANTS 1-100,<br><br>     Defendants. | CIVIL NO. **12 - 1 - 0 3 4 4 - 02**  G W B C<br>[Non-Motor Vehicle Tort]<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; and SUMMONS |

## **COMPLAINT**

COMES NOW, Plaintiff JUSTINE STEVENS (hereinafter "Plaintiff STEVENS"), by and through his attorneys, Michael Jay Green and Glenn H. Uesugi, and for Complaint against Defendants THE SHACK, WAIKIKI, INC.; CB RICHARD ELLIS HAWAII, INC.; CB RICHARD ELLIS, INC.;  WAIKIKI TRADE CENTER INVESTORS, LLC and DOE DEFENDANTS 1-100,, allege and aver as follows:

**ATTACHMENT 2**

RECEIVED

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

1.     Plaintiff STEVENS is and was at all times relevant herein a resident of the County of Honolulu, State of Hawaii.

2.     Defendant THE SHACK, WAIKIKI, INC. (hereinafter "Defendant SHACK") is and was at all times relevant herein a Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

3.     The employees, agents, associates, and/or representatives of Defendant SHACK and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant SHACK were acting within the scope of such relationship. Defendant Defendant SHACK is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

4.     The employees, agents, associates, and/or representatives of Defendant SHACK were acting under the actual and/or apparent authority and/or agency of Defendant Defendant SHACK. Therefore, Defendant SHACK is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant SHACK under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

5.     Defendant CB RICHARD ELLIS HAWAII, INC. (hereinafter "Defendant CB HAWAII") is and was at all times relevant herein foreign  profit corporation doing business in the City and County of Honolulu, State of Hawaii.

2

6.      The employees, agents, associates, and/or representatives of Defendant CB HAWAII and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant CB HAWAII were acting within the scope of such relationship. Defendant CB HAWAII is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

7.      The employees, agents, associates, and/or representatives of Defendant CB HAWAII were acting under the actual and/or apparent authority and/or agency of Defendant CB HAWAII. Therefore, Defendant CB HAWAII is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant CB HAWAII under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

8.      Defendant CB RICHARD ELLIS, INC. (hereinafter "Defendant CB") is and was at all times relevant herein Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

9.      The employees, agents, associates, and/or representatives of Defendant CB and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant CB were acting within the scope of such relationship. Defendant CB is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

10.     The employees, agents, associates, and/or representatives of Defendant CB were

3

acting under the actual and/or apparent authority and/or agency of Defendant CB. Therefore, Defendant CB is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant CB under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

11.     Defendant WAIKIKI TRADE CENTER INVESTORS, LLC (hereinafter "Defendant WTC") is and was at all times relevant herein Hawaii profit corporation doing business in the City and County of Honolulu, State of Hawaii.

12.     The employees, agents, associates, and/or representatives of Defendant WTC and others who held themselves out as being employees, agents, associates, and/or representatives of Defendant WTC were acting within the scope of such relationship. Defendant WTC is therefore liable for all of the acts and/or omissions of its employees, agents and/or putative employees under the doctrine of respondeat superior, or are otherwise vicariously liable for their acts and omissions under principal/agent or master/servant principles.

13.     The employees, agents, associates, and/or representatives of Defendant WTC were acting under the actual and/or apparent authority and/or agency of Defendant WTC. Therefore, Defendant WTC is liable for all acts and/or omissions of the employees, agents, associates, and/or representatives of Defendant WTC under the theory of apparent authority/agency, or is otherwise vicariously liable for its acts and omissions under the theory of apparent authority/agency.

14.     Upon information and belief, at all times relevant herein, Defendant SHACK owned, operated and/or managed a property located at 2255 Kuhio Avenue, Suite S-10 and S-11, Honolulu, Hawaii 96815 and that said premises owned, operated, and/or managed by Defendant

4

SHACK are part of, located at within and/or comprise either in whole or in part the Waikiki Trade Center located at 2255 Kuhio Avenue, Honolulu, Hawaii 96815.

15.     Upon information and belief, at all times relevant herein, Defendants CB HAWAII, CB and/or WTC owned, operated and/or managed a property known as the Waikiki Trade Center located at 2255 Kuhio Avenue, Honolulu, Hawaii 96815.

16.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOE DEFENDANTS 1-100 and therefore sue said Defendants by such fictitious names. Plaintiff will amend his Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct. Plaintiff has made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein. Plaintiff is informed and believes and therefore alleges that at all times herein mentioned, Defendants, and each of them, were the agents, servants and employees of each of the other Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment.

17.     All events described herein occurred in the County of Honolulu, State of Hawaii, and within the jurisdiction of the Circuit Court of the First Circuit, State of Hawaii.

18.     On or about February 7, 2010, Plaintiff STEVENS was hired to work as a "Crown Royal Football Girl" on the premises of Defendant SHACK, for the Super Bowl which was being played that day.

19.     Defendant SHACK was showing the Super Bowl game on February 7, 2010 on its televisions.

5

20.    Plaintiff STEVENS had previously worked on the premises of Defendant SHACK'S Waikiki and other locations on Oahu.

21.    Plaintiff STEVENS and the other Crown Royal Football girls always received great reviews and high approval ratings from both the customers, staff and management of Defendant SHACK as the best team of girls for these Crown Royal promotions.

22.    The General Manager of Defendant SHACK, Brendan Burchfiel, as well as his friend Ben who was a bar back for Defendant SHACK had come to the premises of Defendant SHACK that day visibly intoxicated.

23.    Both Mr. Burchfiel and Ben told Plaintiff STEVENS and the Crown Royal team that they had been up drinking the previous night and had not gone to bed yet.

24.    On that day, Mr. Burchfiel kept insisting that Plaintiff STEVENS and her Crown Royal partner, May Caneso, take Crown Royal shots with him.

25.    Plaintiff STEVENS politely declined, explaining that she did not want to be visibly intoxicated while working.

26.    Ms. Caneso spoke to Mr. Burchfiel and found out that Mr. Burchfiel was in a bad mood because he had only one hour of sleep and that his wife, Ms. Lindy Burchfiel, was there on the premises of Defendant SHACK for the Super Bowl, which was causing him stress.

27.    Upon information and belief, Ms. Lindy Burchfiel felt threatened by Plaintiff STEVENS and Ms. Caneso, because they were hired in part because of their looks and also because Plaintiff STEVENS and Ms. Caneso were intruding on what Ms. Burchfiel considered "her turf".

28.    In spite of these feelings, Plaintiff STEVENS and Ms. Coneso continued to be

nice to everyone at Defendant SHACK'S premises as they were working and trying to remain diplomatic. Not only did they not want complaints to their employers but it was just much easier for the day to go by when everyone was working together with no static in the air.

29.     One strange thing that was just weird was that Ms. Burchfiel came in dressed in an outfit that was strikingly similar to Plaintiff STEVENS and Ms. Coneso's Crown Royal Uniforms.

30.     Mr. Burchfiel started loosening up eventually as the game went on and after Plaintiff STEVENS and Ms. Coneso's shift, Mr. Burchfiel bought a round of drinks with his wife for Plaintiff STEVENS and Ms. Coneso.

31.     After their shift ended, Plaintiff STEVENS and Ms. Coneso changed out of their uniforms and into their normal clothes and decided to celebrate the Superbowl and their last Crown Football Promotion.

32.     Plaintiff STEVENS and her friends did end up goofing around, trying to stick ice down one another shirts.

33.     Defendant SHACK'S management asked Plaintiff STEVENS and her friends to stop because they did not want someone to slip and fall on the ice.

34 .    Plaintiff STEVENS and her friends complied with the request from Defendant SHACK.

35.     Plaintiff STEVENS and her friends then proceeded to pay their tab with Defendant SHACK and were in the middle of cleaning up the ice when Ms. Burchfiel, who was sitting in the next booth, started yelling at Plaintiff STEVENS and her friends to "shut up"

36.     Ms. Burchfiel then came running up, grabbed Plaintiff STEVENS' purse out of

their booth and threw it into another booth.

37.    Plaintiff STEVENS walked over to the other booth to pick up her purse while Ms. Burchfiel kept yelling at Plaintiff STEVENS.

38.    Plaintiff STEVENS was then shoved and/or taken to the floor by Ms. Burchfiel, who then sat on top of Plaintiff STEVENS and pummeled Plaintiff STEVENS with her fists.

39.    One of Defendant SHACK'S bouncers/security personnel attempted to pull Ms. Burchfiel off of Plaintiff STEVENS when Mr. Burchfiel screamed "What the f*** do you think you are doing? That is my wife! Don't f***ing touch her!"

40.    In and about the same time, five or more very large security personnel from Defendant SHACK surrounded Plaintiff STEVENS and Ms. Burchfiel, like they were in a football huddle.

41.    Plaintiff STEVENS attempted to block Ms. Burchfiel's punches, but could not due to the fact that the security personnel from Defendant SHACK held Plaintiff STEVENS' arms down, allowing Ms. Burchfiel a clear shot at Plaintiff's STEVENS.

42.    Plaintiff STEVENS' friends attempted to stop the assault upon Plaintiff STEVENS by Ms. Burchfiel and Defendant SHACK'S security personnel.

43.    Ms. Coneso was screaming for them to stop hitting Plaintiff STEVENS because Plaintiff STEVENS was defenseless, suffocating and was bleeding profusely.

44.    A male friend of Plaintiff STEVENS who witnessed the incident exclaimed "Oh my god, no one is stopping this. Someone needs to call the police!" At that moment all of Defendant SHACK'S security personnel who were surrounding Ms. Burchfiel and Plaintiff STEVENS turned to Plaintiff STEVENS male friend and gave him a look like they were going to

physically assault him if he took out his cellular telephone. Mr. Burchfiel also turned to Plaintiff STEVENS' male friend and said, "What, you think you tough or something???" At that point, Plaintiff STEVENS male friend ran out of Defendant SHACK'S premises and out of The Waikiki Trade Center to call the police.

45.      Ms. Burchfiel continued to pummel Plaintiff STEVENS in the face from the "mount" position, winding up with her fist behind her head before striking Plaintiff STEVENS, even after Plaintiff STEVENS lost consciousness.

46.      When Ms. Burchfiel and the five security personnel who were holding Plaintiff STEVENS down held that the police were coming, they got off of Plaintiff STEVENS and Ms. Burchfiel was instructed to leave the premises.

47.      After Ms. Burchfiel stopped striking Plaintiff STEVENS, a security person from Defendant SHACK proceeded to drag Plaintiff STEVENS across the floor like a dead body. Plaintiff STEVENS friend said that she would take her out of the premises and then proceeded to take Plaintiff STEVENS outside.

48.      Meanwhile, Mr. and Ms. Burchfiel fled the premises of Defendant SHACK. When the police asked where Mr. Brendan Burchfiel and Ms. Lindy Burchfiel were, the employees of Defendant SHACK responded by saying they were not in that day.

49.      While the police were conducting their investigation, one of the SHACK bouncers approached one of Plaintiff STEVENS male friends and said that Plaintiff STEVENS male friend was told that they were sorry about everything and that he was welcome back at any time for free drinks and food. Plaintiff STEVENS' male friend was asked to write his full name and address on a piece of paper that was provided by Defendant SHACK.

9

50.     However, when Plaintiff STEVENS' friend read the piece of paper, he discovered that it was a false account of what happened that Defendant SHACK was attempting to get him to sign.

51.     Since the incident, Mr. Burchfiel has been attempting to intimidate Plaintiff STEVENS and the people who were with her that day on February 7, 2010 at Defendant SHACK from testifying or being witnesses on behalf of Plaintiff STEVENS.

52.     Defendant SHACK knew or should have known of the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel prior to the incident which forms the basis of this lawsuit.

53.     Despite the knowledge of the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel, Defendant SHACK failed to take any reasonable action(s) to address the dangerous condition or otherwise remove the danger presented by its employees, agents, representatives or security personnel to it patrons and/or the general public.

54.     The owners and/or management of Defendant SHACK know or should have known and/or observed and therefore was aware of the  abusive, inappropriate, threatening, and violent behavior and/or propensity for violence by its employees, agents, representatives or security personnel but did nothing to investigate, remove, warn or otherwise address the dangerous condition presented by its security personnel to its patrons and/or the general public.

55.     Defendant SHACK retained security services and/or security personnel for the premises.

56.     Defendant SHACK through its employees, agents, representatives or security

10

personnel witnessed the incident, stood by and failed to act, intervene and/or protect Plaintiff and/or otherwise negligently performed and/or omitted to perform security related duties to prevent the incident, protect Plaintiff from the physical contacts and injuries suffered in the incident, and/or timely respond and/or intervene to halt the physical contacts and injury of Plaintiff.

57.     Defendant SHACK had a duty to provide adequate security for the premises, in general, and for Plaintiff in particular.

58.     Defendant SHACK through its employees, agents, representatives or security personnel failed in the discharge of that duty.

59.     Defendant SHACK failed in the discharge of its duty to provide adequate security for the premises in general and Plaintiff in particular.

60.     Defendant SHACK was negligent in hiring, training, and/or supervision of its employees, agents, representatives or security personnel responsible for upholding the duty owed to Plaintiff.

61.     Defendant SHACK was negligent in the hiring, training, and supervision of its security personnel.

62.     Defendant SHACK owed a duty to Plaintiff to protect him from unreasonable risks of harm and/or danger from its employees, agents, and/or representatives while Plaintiff was both on or off the premises.

63.     Defendant SHACK breached its duty to protect Plaintiff from unreasonable risks of harm and/or danger from its employees, agents, and/or representatives and/or security personnel while Plaintiff was both on or off the premises.

11

64.     As a result of prior crimes and/or incidents that occurred on and/or off the premises, Defendant SHACK knew or in the exercise of reasonable care, should have known of the possibility, if not the propensity, for criminal conduct on and/or off the premises being perpetrated by its employees, agents and/or representatives and/or security personnel.

65.     As a result of Defendant SHACK'S knowledge, it had a duty to protect patrons and others from the foreseeable danger and/or harm of the type caused by its  employees, agents and/or representatives and/or security personnel and/or DOE DEFENDANTS on Plaintiff.

66.     Defendant SHACK breached its duty including, but not limited to, failing adequately to protect Plaintiff from harm by failing to supervise its  employees, agents and/or representatives and/or security personnel and/or to have sufficient and adequately trained security staff.

67.     Upon information and belief, Plaintiff alleges and avers that on occasions prior to the attack on Plaintiff, others have been assaulted by employees, representatives, agents or security personnel of Defendant SHACK at the Waikiki Trade Center.

68.     Defendants CB HAWAII, CB, and/or WTC knew or should have known of the abusive, inappropriate, threatening, and violent behaviors and/or propensity for violence of its tenants, Defendant SHACK'S employees, representatives, agents and/or security personnel prior to the attack upon Plaintiff.

69.     Despite the abusive, inappropriate, threatening, and violent behavior and/or propensity for violence of Defendant SHACK'S employees, agents, representatives and/or security personnel, Defendants  CB HAWAII, CB, and/or WTC failed to take any reasonable actions to address the dangerous condition or otherwise remove the danger presented by

Defendant SHACK or its employees, representatives, agents and/or security personnel to its

patrons and/or the general public, including but not limited to, investigating, warning, removing,

evicting or otherwise addressing the dangerous condition created by Defendant SHACK.

      70.     As a result of these prior crimes and/or incidents at the Waikiki Trade Center

and/or the SHACK premises, Defendants CB HAWAII, CB, and/or WTC knew or in the exercise

of reasonable care, should have known of the possibility, if not the propensity, for criminal

conduct at the Waikiki Trade Center and/or the SHACK premises being perpetrated by

Defendant SHACK'S employees, representatives, agents and/or security personnel and/or DOE

DEFENDANTS.

      71.     As a result of Defendants CB HAWAII, CB, and/or WTC's knowledge,

Defendants CB HAWAII, CB, and/or WTC had a duty to protect patrons and/or the general

public from the foreseeable danger and/or harm of the type caused by Defendant SHACK's

employees, representatives, agents and/or security personnel and/or DOE DEFENDANTS on

Plaintiff.

      72.     Defendants  CB HAWAII, CB, and/or WTC owed a duty to Plaintiff to provide

adequate security for the Waikiki Trade Center and/or SHACK premises in general and Plaintiff

in particular.

      73.     Defendants CB HAWAII, CB, and/or WTC breached their respective duties,

including, but not limited to, failing adequately to protect Plaintiff from harm by failing to

supervise the Waikiki Trade Center and/or SHACK premises appropriately and to have sufficient

and adequately trained security staff monitor the Waikiki Trade Center and/or SHACK premises

and protect patrons.

74.     Defendants CB HAWAII, CB, and/or WTC failed in the discharge of its/their duty to provide adequate security for the Waikiki Trade Center and/or SHACK premises in general and Plaintiff in particular.

75.     Upon information and belief, Plaintiff alleges and avers that at all relevant times herein, Defendants CB HAWAII, CB, and/or WTC, by and through their agents, employees, and/or representatives retained security services and/or security personnel for the Waikiki Trade Center.

76.     Upon information and belief, Plaintiff alleges and avers that at the time of the incident involving said Defendants and Plaintiff set forth above, Defendants CB HAWAII, CB, and/or WTC, together, individually or through their employees, agents, and/or representatives, and/or security personnel, witnessed the incident, stood by and failed to act, intervene, and/or protect Plaintiff, and/or otherwise negligently performed and/or omitted to perform security related duties to prevent the incident, protect Plaintiff from the physical contacts and injuries suffered in the incident, and/or timely respond and/or intervene to halt the physical contacts and injuries of Plaintiff.

77.     Defendants CB HAWAII, CB, and/or WTC, together or individually, were negligent in hiring, training, and/or supervision of its employees, representatives, agents or security personnel responsible for upholding the duty owed to Plaintiff.

78.     Defendants CB HAWAII, CB, and/or WTC, either directly and/or through their agents, were negligent in hiring, training, and supervising, each respective security personnel.

79.     Defendants CB HAWAII, CB, and/or WTC owed a duty to Plaintiff to protect him from unreasonable risks of harm and/or danger while he was on the Waikiki Trade Center

14

premises.

80.     Defendants CB HAWAII, CB, and/or WTC breached its duty to protect Plaintiff from unreasonable risks of harm and/or danger while he was on the Waikiki Trade Center premises.

81.     Defendants CB HAWAII, CB, and/or WTC are responsible for the acts and omissions of their agents, contractors and employees as well as its own.

82.     Defendants CB HAWAII, CB, and/or WTC, individually and/or separately or in combination, by and/or through its/their respective agents, employees and/or authorized representatives, operated, maintained and/or managed the Waikiki Trade Center premises.

83.     Defendants CB HAWAII, CB, and/or WTC, its/their agents, servants, employees, and/or authorized representatives owed a duty of care to persons on the Waikiki Trade Center premises, and Plaintiff would not have sustained injuries and damages in the ordinary course of events unless the person or persons exercising management or control of the Waikiki Trade Center failed to exercise ordinary care or had been negligent.

84.     Defendants SHACK, CB HAWAII, CB, and/or WTC its/their respective agents, servants and/or employees negligent performance and/or omission to perform their duties with respect to the presence and conduct of Defendant SHACK's employees, agents, representatives and/or security personnel and DOE DEFENDANTS as set forth above, negligently created a dangerous condition on the Waikiki Trade Center premises, resulting in Plaintiff being battered, injured and damaged.

85.     In committing the above acts and omissions, Defendants acted wantonly and/or oppressively and/or with such malice as implies a spirit of mischief or criminal indifference to

civil obligations and/or there has been some wilful misconduct that demonstrates that entire want of care which would raise the presumption of a conscious indifference to consequences, justifying an award of punitive damages in an amount to be proven at trial.

## COUNT I: ASSAULT AND/OR BATTERY

86.     Plaintiff realleges and incorporates by reference paragraphs 1 through 85 as if said paragraphs were fully set forth herein.

87.     The above acts by Defendants constituted unlawful assault and/or battery against Plaintiffs.

88.     As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiffs suffered special and general damages in an amount to be proven at trial.

## COUNT II: NEGLIGENCE

89.     Plaintiff realleges and incorporates by reference paragraphs 1 through 88 as if said paragraphs were fully set forth herein.

90.     Based on the acts described above, Defendants are liable to Plaintiff for negligence for failing to, *inter alia*:

       a.     Properly train, supervise, discipline, retain, hire and/or discharge its employees, agents and/or representatives; and/or

       b.     Was otherwise negligent in its care and/or treatment of Plaintiff during the events in question on or about the December 1, 2009 and thereafter.

91.     As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an

amount to be proven at trial.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92.     Plaintiff realleges and incorporates by reference paragraphs 1 through 91 as if said paragraphs were fully set forth herein.

93.     The above acts by Defendants with respect to Plaintiff constituted intentional infliction of severe emotional distress.

94.     As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.     Plaintiff realleges and incorporates by reference paragraphs 1 through 94 as if said paragraphs were fully set forth herein.

96.     The above acts by Defendants with respect to Plaintiff constituted negligent infliction of severe emotional distress.

97.     As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully prays for judgment in their favor and against Defendants jointly and severally, as follows:

A.     For general damages in amount to be shown at trial;

B.     For special damages in an amount to be shown at trial;

C.     For punitive and/or exemplary damages in an amount to be shown at trial; and

17

D.     For attorneys' fees, costs, prejudgment and post-judgment interest and such other and further relief both legal and equitable as the Court deems just and necessary under the circumstances.

DATED: Honolulu, Hawaii, FEB 0 6 2012 _____

_____
MICHAEL JAY GREEN
GLENN H. UESUGI
Attorneys for Plaintiff
JUSTINE STEVENS

18

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

JUSTINE STEVENS,                        )    CIVIL NO. _____
                                        )    [Non-Motor Vehicle Tort]
            Plaintiff,                  )
                                        )    DEMAND FOR JURY TRIAL
      vs.                               )
                                        )
THE SHACK, WAIKIKI, INC.; CB            )
RICHARD ELLIS HAWAII, INC.; CB          )
RICHARD ELLIS, INC.;  WAIKIKI TRADE     )
CENTER INVESTORS, LLC and DOE           )
DEFENDANTS 1-100,                       )
                                        )
            Defendants.                 )
_____ )

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED: Honolulu, Hawaii, _____ FEB 06 2012 _____

                                    _____
                                    MICHAEL JAY GREEN
                                    GLENN H. UESUGI
                                    Attorneys for Plaintiff
                                    JUSTINE STEVENS

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| JUSTINE STEVENS, | ) | CIVIL NO. 12-1-0514-02 |
| | ) | [Non-Motor Vehicle Tort] |
| Plaintiff, | ) | |
| | ) | SUMMONS |
| vs. | ) | |
| | ) | |
| THE SHACK, WAIKIKI, INC.; CB | ) | |
| RICHARD ELLIS HAWAII, INC.; CB | ) | |
| RICHARD ELLIS, INC.; WAIKIKI TRADE | ) | |
| CENTER INVESTORS, LLC and DOE | ) | |
| DEFENDANTS 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **SUMMONS**

STATE OF HAWAII

TO:      THE DEFENDANTS

YOU ARE HEREBY SUMMONED and required to file with the court and serve upon Plaintiff's attorneys, whose address is stated above, an answer to the Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer within the twenty day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled Court permits, in writing on this Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawaii, _____ FEB - 6 2012 _____

_____

CLERK OF THE ABOVE-ENTITLED COURT

2